IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 14 2017

CLERK, U.S. DISTRICT COURT
By_____
        Deputy

JANET PARISH,                      §
                                   §
        Plaintiff,                 §
                                   §
VS.                                §    NO. 4:17-CV-120-A
                                   §
MACY'S RETAIL HOLDINGS, INC.,      §
                                   §
        Defendant.                 §

MEMORANDUM OPINION
and
ORDER

Before the court for consideration is the motion that

plaintiff, Janet Parish, filed October 24, 2017, titled

"Plaintiff's Motion to Stay and Compel Arbitration."  After

having considered such motion, the response thereto of defendant,

Macy's Retail Holdings, Inc. ("Macy's"), plaintiff's reply, the

entire record of the above-captioned action, and pertinent legal

authorities, the court has concluded that such motion should be

denied.

I.

Grounds of the Motion to Stay and Compel Arbitration

Plaintiff relied on the oft-repeated proposition that the

Federal Arbitration Act ("Act") requires that a written

arbitration clause in any "contract evidencing a transaction

involving commerce . . . shall be valid, irrevocable, and

enforceable save upon such grounds as exist at law or in equity

in the revocation of any contract." 9 U.S.C. § 2. Apparently there is no disagreement between the parties that plaintiff would be entitled to arbitrate her dispute with Macy's unless she has taken some action that has caused her to lose that right. Plaintiff anticipated in her motion that Macy's would contend that she had waived her right to arbitration by her litigation conduct in the instant action. She argued that there was no waiver, and that in any event Macy's has not been prejudiced by her failure to timely assert her right to arbitration.

Plaintiff alleged in her motion that she first learned on October 20, 2017, when Macy's produced a summary plan description ("SPD") of its Injury Benefit Plan ("Plan"), that the Plan contained an arbitration provision and that the claims she has asserted in this action are subject to binding arbitration pursuant to that provision. Plaintiff acknowledged that she received on May 22, 2017, a single-page Receipt, Safety Pledge, and Arbitration Acknowledgement ("Acknowledgment"), but that Macy's did not produce the SPD referenced in that document until October 20, 2017. She alleged that she did not know before that date that the Plan contained a binding arbitration agreement. According to her, when she received the SPD on October 20, 2017, she "learned for the first time that there was an arbitration provision relating to any claim related to physical or

psychological damage, even those under common law as asserted in this case." Doc. 50 at 2-3. She contended that "[h]ad [she] known there was a binding arbitration provision that applied to her claims, she would have elected arbitration back in May, 2017." Id. at 3. Somewhat in the alternative, plaintiff contended that even if her assertion of a right to arbitration was untimely, she cannot be held to have waived that right inasmuch as Macy's has not been prejudiced by her untimeliness.

II.

## Macy's' Response to Plaintiff's Motion

Macy's questioned the timeliness of plaintiff's arbitration request; and, as plaintiff had anticipated, Macy's responded that by substantially invoking the judicial process through her prosecution of this action to the prejudice of Macy's, plaintiff waived her right to insist on arbitration. Macy's gave a chronology of things that have occurred in this litigation, including the taking of depositions that are not recorded in the clerk's record of this action, starting on January 5, 2017, and going through the filing by plaintiff of her motion to stay and compel arbitration. According to Macy's, plaintiff's conduct was such that it constituted overt acts in court that evinced a desire to resolve the arbitrable dispute through litigation rather than arbitration.

3

Macy's alleged that it has suffered prejudice, noting that "prejudice" in the applicable context means "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." Doc. 57 at 4-5 (citing Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd., 575 F.3d 476, 480 (5th Cir. 2009)). According to Macy's, the prejudice it suffered includes having incurred over $175,000 in defense costs defending plaintiff's prosecution in this action.

### III.

### History of the Litigation

As the following litigation history discloses, when viewed from the standpoint of court activity, this litigation has been active since its early-January 2017 filing:[1]

This action was initiated in state court on January 5, 2017, by the filing by plaintiff of a pleading against Macy's, seeking to recover damages by reason of a slip-and-fall accident plaintiff had on March 9, 2015, at Macy's' Hulen Mall department store, where plaintiff served as an employee. Macy's answered

---

[1]This history of activity does not include discovery activity of the parties that would not be on the court's docket. The record indicates that extensive discovery was conducted by each party, including the taking of twelve oral depositions, eight of which were noticed by plaintiff, and four of those were of experts.

plaintiff's state court pleading on January 27, 2017. Plaintiff

filed an amended state court pleading on February 6, 2017. On

February 8, 2017, Macy's removed the action to this court based

on diversity of citizenship and amount in controversy.

On March 10, 2017, the court ordered plaintiff to file an

amended complaint for the purpose of causing plaintiff's pleading

to satisfy the pleading requirements of the Federal Rules of

Civil Procedure, the Local Civil Rules of this court, and the

undersigned judge's specific requirements. The amended complaint

was filed, with a jury demand, on March 23, 2017. Plaintiff

sought to recover monetary damages for injuries she suffered as a

result of the slip and fall. She alleged that Macy's' actions

related to her slip-and-fall accident constituted gross

negligence. Macy's answered the amended complaint on April 7,

2017.

On April 10, 2017, the court issued an eleven-page Status

Report Order that had as a goal bringing to the surface any

issues that would need to be considered by the court in advance

of trial. It defined procedures that would encourage settlement

activity by the parties, and certain pretrial procedures that

would have to be followed during the pendency of this action.

On May 9, 2017, the parties filed a Joint Status Report and

Discovery Control Plan in which they stated their respective

factual and legal positions in this action, and informed the court that there were no pending motions but that Macy's anticipated filing a motion for protective order, that plaintiff anticipated filing a motion for spoliation instructions, and that both parties anticipated filing motions for summary judgment to narrow the issues in this case. The parties requested a trial date of June 11, 2018; and, they provided a proposed discovery plan that detailed deadlines for accomplishment of discovery activities in which they proposed to engage, starting on May 22, 2017, and concluding on May 8, 2018. On May 9, 2017, the court issued a scheduling order, which provided a discovery deadline of September 25, 2017, a motion deadline of thirty days ahead of the pretrial conference, a pretrial conference date of October 16, 2017, and jury trial date of December 18, 2017.

On May 23, 2017, plaintiff added to her legal representation through the entry of an appearance by another attorney on her behalf. On May 26, 2017, the parties jointly filed a motion to amend the scheduling order, which was denied. The parties filed their disclosure and designation of expert testimony on June 19, 2017.

On September 12, 2017, the parties jointly moved for an extension of the discovery deadline fixed by the scheduling order. On September 13, 2017, the court granted that motion by

extending the deadline for conducting oral depositions to
October 1, 2017, and by ordering that each side arrange for its
retained experts to be available to give their oral depositions
by that date.

On September 15, 2017, plaintiff filed her motion for
sanctions due to spoliation and noncompliance with discovery
obligations, to which Macy's responded on October 12, 2017.
Plaintiff replied to the response on October 16, 2017. The
sanctions plaintiff sought by her September 15, 2017 motion, if
granted, would have had a significant adverse impact on Macy's'
defense prospects in this action.

Macy's filed on September 18, 2017, its second amended
answer, in response to plaintiff's amended complaint; and, on
September 25, 2017, Macy's designated its lead counsel.

On October 10, 2017, the parties jointly filed a report of a
settlement conference they had on October 5, 2017, at which
plaintiff, her counsel, Macy's' counsel, and a corporate
representative of Macy's negotiated for two hours in an attempt
to reach a settlement.

Macy's filed on October 12, 2017, its motion to reopen
discovery and for leave to file a motion for sanctions, both of
which requests were based on the failure of plaintiff to disclose
in her discovery responses involvement by plaintiff in an

automobile accident that occurred on April 30, 2017, before the discovery responses were made. On October 16, 2017, plaintiff filed her partial opposition to such motion.

On October 13, 2017, the court received from the parties a proposed pretrial order. It made no mention of anything having to do with arbitration. It listed the pending motions as being plaintiff's motion for sanctions due to spoliation and noncompliance with discovery obligations, and Macy's' motion to reopen discovery. Plaintiff devoted four pages of the proposed order to a detailed statement of her claims. The parties provided a list of facts established by pleadings, by stipulations, or by admissions; an agreed list of the alternate issues of fact to be decided by the fact finder; an agreed list of the contested issues of law; a list of each party's expert witnesses, and a summary of the opinions to be given by each. Two retained experts and six non-retained experts were listed as expert witnesses for plaintiff; and, Macy's listed two retained experts, and said that it cross-designated all of plaintiff's listed retained and non-retained experts, reserving the right to elicit testimony from each of them, whether by direct examination or cross-examination. Under the heading "additional matters that would aid in the disposition of the case," the parties stated that they contemplated filing motions in limine, that Macy's

anticipated filing a motion for leave to file a motion for summary judgment as to punitive damages, and that plaintiff anticipated a motion to quash depositions by written questions to CIGNA and Internal Revenue Service, and a motion for protective order. The parties said that they anticipated that the trial would last four to five days, and they requested that an agreed jury questionnaire be submitted to the venire panel.

The proposed pretrial order made disclosures that help explain why plaintiff initially preferred to have her case decided by a jury rather than an arbitrator, and why Macy's has incurred such large legal expense in defense of plaintiff's claims. It disclosed that plaintiff proposes to have expert testimony that her medical-type expenses related to her slip-and-fall accident will total approximately $2,500,000, and that, in addition to an intent to ask a jury to award her that amount, she has plans to ask the jury to award her additional amounts for loss of earnings in the past, loss of earning capacity in the future, physical impairments sustained in the past, physical impairment she will sustain in the future, physical pain and mental anguish she has sustained in the past, and physical pain and mental anguish she will sustain in the future. The appearance is that plaintiff will be asking the jury to award her for actual damages in an amount in excess of $3 million.

A pretrial conference was conducted on October 16, 2017,
during which the pending motions were discussed, plaintiff's
counsel was directed by the court to provide defense counsel
information related to whatever injury claim plaintiff might have
made as a result of her April 2017 automobile accident, and the
court authorized Macy's to conduct a deposition of plaintiff
related to the automobile accident and whatever injuries
plaintiff claimed she suffered as a result of the accident. The
court expressed dissatisfaction with the proposed pretrial order
the parties presented to the court, and discussed supplementation
that would be required for the pretrial order to be acceptable.
The court authorized Macy's to file a motion for summary judgment
limited to the issue of whether exemplary damages could be
recovered.

On the date of the pretrial conference, the court issued an
order that required the parties, through their attorneys, to
engage in the following additional pretrial activities:  (1) meet
for the purpose of identifying and marking trial exhibits, and to
agree on and file a trial exhibit list, (2) each serve on the
other and file a list of facts to be proved at trial and then to
meet for the purpose of discussing which of those facts are
genuinely in dispute, (3) then deliver to Chambers a revision of
the pretrial order by December 4, 2017, (4) each file by

December 7, 2017, a brief on all legal issues listed in the revised pretrial order, and (5) jointly file by December 8, 2017, a proposed jury verdict form.

Two additional orders were issued by the court on October 16, 2017, one putting in written form the authorization for Macy's to file a motion for summary judgment on the issue of exemplary damages, and the other denying in its entirety plaintiff's motion for sanctions due to spoliation and noncompliance with discovery obligations.

On October 17, 2017, the court issued an order granting Macy's' motion to reopen discovery and for leave to file a motion for sanctions. In that order the court detailed additional discovery Macy's would be permitted to conduct on subjects related to the automobile accident and the injuries plaintiff has claimed she suffered as a result of that accident; and, the court ordered lead counsel for the plaintiff to promptly provide certain information related to the automobile accident and plaintiff's claimed injuries as a result thereof, and ordered plaintiff to file by October 24, 2017, a document in which she would list all information and items her counsel provided to counsel for Macy's pursuant to the directives of the order.

In the October 17, 2017 order, the court granted Macy's leave to file by November 27, 2017, a motion for sanctions based

on plaintiff's failure to disclose anything concerning her April 2017 automobile accident or injuries resulting from that accident when she made discovery responses after the date of the automobile accident that would have made a full disclosure of those matters if the responses had been complete and truthful.[2]

On October 23, 2017, Macy's filed its motion for partial summary judgment on plaintiff's claim for punitive damages, to which plaintiff responded on November 2, 2017. Macy's replied to the response on November 6, 2017.

On October 24, 2017, plaintiff, instead of filing the document she was ordered to file on that date, filed the motion to stay and compel arbitration the court now has under consideration, to which Macy's responded on November 1, 2017. Plaintiff replied to the response on November 6, 2017. This motion to stay and compel arbitration is the first time plaintiff mentioned anything about arbitration during the almost ten months of the pendency of this action.

The parties filed on October 24, 2017, their joint list of trial exhibits in which 158 exhibits were listed. On October 27, 2017, plaintiff filed her 38-page list of facts she proposed to

---

[2]The October 17, 2017 order quoted Macy's interrogatories to plaintiff that would have required disclosure of information about the April 2017 automobile accident if truthfully answered, and plaintiff's answers to the interrogatories, which made no disclosure of the automobile accident or any medical treatment plaintiff received for injuries she suffered in that accident.

prove at trial and the method by which she proposed to make the proof of each of those facts; and, on that same date, Macy's filed its 45-page list of facts it planned to prove at trial, giving the method by which it planned to prove each of those facts.

Two documents were filed on November 3, 2017, one filed by lead counsel for plaintiff explaining plaintiff's noncompliance with the October 17, 2017 order, and the other a notice of appearance of additional counsel for Macy's.

IV.

## Analysis

A.  Arbitration Would Be Required If Timely Requested and Not Waived

Macy's does not disagree with plaintiff's contention that she would have been entitled to require arbitration of her dispute with Macy's had she timely requested it and did not take action that would cause her to lose that right.  Therefore, the court now turns to the factors that bear on the contentions of Macy's that plaintiff did not timely request arbitration and that she has taken action that caused her to waive her right to arbitration.

B.   Plaintiff Did Not Timely Request Arbitration

In support of her non-waiver argument, plaintiff maintained that she did not request arbitration earlier than she did because "[s]he was not provided a copy of the benefit plan documents containing the mandatory arbitration provision before October 20, 2017." Doc. 50 at 5.  The record does not support that contention.  Rather, the record reflects that plaintiff was on notice of the availability of arbitration in September 2014, and certainly by May 22, 2017.

1.   Plaintiff's 2014 Acknowledgment of Awareness of the Availability of Arbitration

The Acknowledgment to which plaintiff refers in her motion, supra at 2, shows that it was signed by plaintiff on September 20, 2014.  Doc. 52, Ex. A at App. 001.[3]  It starts by reciting that by her signature on the document plaintiff acknowledges that she has "received and read (or had the opportunity to read) the Summary Plan Description (the 'SPD') for the Macy's, Inc. Injury Benefit Plan for Texas Employees, effective February 1, 2005."  Id.  The Acknowledgment provided

_____

[3]The "Doc. ___" references are to the numbers assigned to the referenced items on the docket in this Case No. 4:17-CV-120-A.

14

plaintiff the following information relative to her obligation to comply with the arbitration requirements contained in the SPD:

> ARBITRATION. I also acknowledge that this SPD includes a mandatory company policy requiring that certain claims or disputes relating to an on-the-job injury (that cannot otherwise be resolved between the Company and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Company at any time on or after February 1, 2005, I am accepting and agreeing to comply with these arbitration requirements.

Id.

The SPD that plaintiff represented in the Acknowledgment she had received and read (or had the opportunity to read) contains under the heading "Arbitration of Certain Injury-Related Disputes" the following explanations to plaintiff:

> The Company has adopted a mandatory company policy requiring that you comply with the following arbitration requirements.
>
> Arbitration Requirement
>
> All claims or disputes described below that cannot otherwise be resolved between the Company and you are subject to final and binding arbitration. This binding arbitration is the only method for resolving any such claim or dispute.
>
> Claims Covered By This Arbitration Requirement
>
> This arbitration requirement applies to:
>
> > any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in a Receipt, Safety

Pledge, and Arbitration Acknowledgement form or this arbitration requirement; and

> any legal or equitable claim by or with respect to you for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; and claims for assault, battery, negligent hiring/training/supervision/retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this booklet).

This includes all claims listed above that you have now or in the future against the Company, its officers, directors, owners, employees, representatives, agents, subsidiaries, affiliates, successors, or assigns. This does not, however, include any legal or equitable claim under ERISA for benefits, fiduciary breach, or other problem or relief solely relating to benefits payable under this Plan.

The determination of whether a claim is covered by these provisions will also be subject to arbitration under this arbitration requirement. <u>Neither you nor the Company will be entitled to a bench or jury trial on any claim covered by this arbitration requirement. This arbitration requirement applies to all employees that satisfy the Plan's eligibility requirements without regard to whether they have completed and signed a Receipt, Safety Pledge, and Arbitration Acknowledgement form.</u> These provisions also apply to any claims that may be brought by your spouse, children, beneficiaries, representatives, executors, administrators, guardians, heirs or assigns. This binding arbitration will be the sole and exclusive remedy for resolving any such claim or dispute.

16

Id., Ex. B at App. 003.

2. The Legal Effect of the 2014 Acknowledgment

The law is quite clear that the signing by plaintiff of the Acknowledgment put her on notice in September 2014 of the arbitration provision. The Texas Supreme Court has at least twice held that a person who signs a document is presumed to know its contents, including any document specifically incorporated by reference. See In re Int'l Profit Assocs., Inc., 286 S.W.3d 921, 923-24 (Tex. 2009); In re Lyon Fin. Servs., Inc., 257 S.W.3d 228, 232-33 (Tex. 2008). The law of the Fifth Circuit is the same. See Espinoza v. Cargill Meat Sols. Corp., 622 F.3d 432, 441, 480 (5th Cir. 2010).

Plaintiff has not contended that she did not read what she signed in September 2014, or that she did not receive or read the SPD that was referenced in the Acknowledgment. Even if she had made such a contention, it would not provide legal support for her claim of ignorance of the arbitration provision. See In re Int'l Profit Assocs., Inc., 286 S.W.3d at 923-24. Rather, plaintiff's contention is that she has no recollection of what she signed in September 2014. That contention is equally

unavailing. In <u>Burlington Northern Railroad Co. v. Akpan</u>, a Texas Court of Appeals explained:

> In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained . . . . [A]ctual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed.

943 S.W.2d 48, 51 (Tex. App.--Fort Worth Dec. 5, 1996, no writ)(quoting <u>Hexter v. Pratt</u>, 10 S.W.2d 692, 693 (Tex. Comm'n App. 1928, judgm't affirmed)). In <u>Burlington Northern</u>, the court made the following additional observation that is directly pertinent to plaintiff's poor-memory contention:

> [W]e cannot find that a party's subsequent denial of knowledge of a material fact is any evidence of lack of knowledge where the party admits receipt of actual notice of the fact, then fails to read it <u>or remember it</u>, either by his own negligence or by his conscious choice.

943 S.W.2d at 51 (emphasis added).

The court finds that the information plaintiff had when she signed the Acknowledgment in September 2014 was sufficient to put her on notice that she had the right to cause the claims she is asserting in this action to be resolved through arbitration.

3. <u>Plaintiff Admits That Her Attorney Received on May 22, 2017, a Copy of the Acknowledgment, Which Would Put Plaintiff and Her Attorney on Notice of Plaintiff's Right to Arbitrate the Claims She Is Asserting in This Action</u>

Plaintiff admits in her motion that she and her counsel received on May 22, 2017, a copy of the September 20, 2014 Acknowledgment signed by plaintiff. Doc. 50 at 2. Even if plaintiff was not already on notice of the right to have her claims against Macy's submitted to arbitration, she certainly was put on notice of that fact on May 22, 2017. While significant activity had taken place in this action before that date, by far the most time-consuming activity, and the activity most vital to the outcome of the litigation, occurred after that date and before plaintiff filed the motion now under consideration.

C. <u>Legal Principle Applicable to Macy's' Waiver Contention</u>

A party waives her right to arbitration "when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." <u>Petroleum Pipe Americas Corp.</u>, 575 F.3d at 480 (quoting <u>Walker v. J.C. Bradford & Co.</u>, 938 F.2d 575, 577 (5th Cir. 1991)(internal quotation marks omitted)). In that context, "prejudice" means "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue."

19

_Id._ (quoting Republic Ins. Co. v. PAICO Receivables, LLC, 383

F.3d 341, 346 (5th Cir. 2004)(internal quotation marks omitted)).

In Petroleum Pipe Americas Corp., the Fifth Circuit said that:

> Three factors are particularly relevant to the
> prejudice determination: (1) whether discovery occurred
> relating to arbitrable claims; (2) the time and expense
> incurred in defending against a motion for summary
> judgment; and (3) a party's failure to timely assert
> its right to arbitrate.

575 F.3d at 480 (citing Republic Ins. Co., 383 F.3d at

346)(internal quotation marks and brackets omitted)).

Sufficient prejudice to cause a waiver of a right of

arbitration has been found to exist if the opposing party has

incurred significant legal expenses in the litigation, if the

arbitration would place the party in a weaker legal position, and

if significant delay has occurred. See In re Mirant Corp., 613

F.3d 584, 592 (5th Cir. 2010). The moving party should not be

allowed a second bite at the apple through arbitration, nor

should a party be permitted to play "heads I win, tails you lose"

by testing the waters through litigation and, when concerned with

the litigation outcome, move for arbitration. _Id._ at 590.

The decision of a party to file suit rather than to

arbitrate typically indicates a disinclination to arbitrate.

Nicholas v. KBR, Inc., 565 F.3d 904, 908 (5th Cir. 2009). In

Nicholas, the court explained the rule that "the act of a

plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies[,]" id., and that "short of directly saying so in open court, it is difficult to see how a party could more clearly evince a desire to resolve a dispute through litigation rather than arbitration," id. (quoting Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co., 304 F.3d 476, 484 (5th Cir. 2002))(internal quotation marks and brackets omitted).

D.   Plaintiff Substantially Invoked the Judicial Process Before Moving for Arbitration

In addition to establishing that plaintiff's attempt to arbitrate her dispute with Macy's was not timely, the record establishes with certainty that she substantially invoked the judicial process, and that she continued to do so for months before she moved for an order requiring arbitration of the dispute.

The Nicholas opinion establishes the rule in the Fifth Circuit that the filing by a plaintiff of a suit without asserting an arbitration clause satisfies the substantial-invocation-of-the-judicial-process prong unless an exception applies. Nicholas, 565 F.3d at 908. In Nicholas, the Fifth Circuit gave examples of exceptions that could apply. Id. at 908-09. Nothing comparable to the listed examples exists in this

action. Not only did plaintiff by the filing of this action "clearly evince a desire to resolve [the] dispute through litigation rather than arbitration," id. at 908, she eliminated any doubt that could otherwise exist as to her desire to resolve this dispute through litigation by her aggressive prosecution of her claims in this action, with no mention of arbitration, for approximately ten months before she moved for arbitration after she saw that things were not going as favorably to her in the litigation as she would like. The court is satisfied, and finds, that plaintiff substantially invoked the judicial process before she moved for arbitration.

E.    An Order of Arbitration at This Stage Would Be to the Prejudice of Macy's

The Fifth Circuit reminded in Nicholas that "where a party fails to demand arbitration . . . ., and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, i.e., prejudiced." Id. at 910 (quoting Republic Ins. Co., 383 F.3d at 347)(internal quotation marks omitted).

The facts presented in Nicholas that caused the Fifth Circuit to conclude that the plaintiff had substantially invoked the judicial process to the prejudice of the defendant and,

therefore, had waived arbitration are not significantly different in principle from the facts presented in the instant action. Id. at 910-11. By finding the existence of prejudice under the Nicholas facts, the Fifth Circuit set a precedent that clearly supports a finding here that Macy's was prejudiced by plaintiff's untimely request for arbitration. Id. Factors the Fifth Circuit indicated were important included the expense the defendant had incurred in the litigation, the fact that the request for arbitration came at a crucial time in the litigation, and the fact that the defendant would be prejudiced by having to re-litigate in the arbitration forum issues already decided by the district court in the defendant's favor. Id. The Fifth Circuit also considered pertinent the differences in district court discovery opportunities compared to discovery availability in arbitration. Id. at 911.

Every one of the factors mentioned in Nicholas exists in this case. Defense counsel has stated in her affidavit that Macy's has incurred over $175,000 in defense costs in this action. The request for arbitration came at a crucial time in the litigation: Plaintiff was faced with sanctions for her failure to disclose in discovery the existence of, and the injuries she suffered in, an April 2017 automobile accident; after Macy's learned of the April 2017 automobile accident, it

obtained a ruling from the court authorizing Macy's to make full discovery of the facts related to that accident and the injuries plaintiff received or claimed to have received as a result of the accident; plaintiff had learned that she would not be able to utilize at trial a claim that Macy's had concealed from plaintiff a video recording related to plaintiff's slip-and-fall; and, Macy's was given an opportunity to file a motion for summary judgment on the issue of punitive damages. Macy's would be faced with the prospect of re-litigating issues it had already successfully litigated in this action. And, the parties were faced with a trial date in December 2017, in preparation for which defense counsel undoubtedly has already devoted significant time and attention.

The court finds that Macy's would be severely prejudiced if at this time plaintiff were to be permitted to terminate this litigation plaintiff started in early-January 2017 and to start afresh in an arbitration proceeding.

F. Conclusion

For the reasons given above, the court finds that plaintiff's request for arbitration was untimely, and that plaintiff has waived her right to arbitration by substantially invoking the judicial process to the detriment and prejudice of

Macy's before seeking to abandon the litigation and to proceed in arbitration.

V.

<u>Order</u>

Therefore,

The court ORDERS that plaintiff's motion to stay and compel arbitration be, and is hereby, denied.

SIGNED November 14, 2017.

JOHN MCBRYDE
United States District Judge